82 So.2d 800

The STATE of Alabama et al.

v.

ALUMINUM ORE CO., et al.

1 Div. 619.

Supreme Court of Alabama.

Oct. 13, 1955.

John Patterson, Atty. Gen., and Willard
W. Livingston and H. Grady Tiller, Asst.
Attys. Gen., for appellants.

424

McCorvey, Turner, Rogers, Johnstone & Adams, Mobile, for appellees.

MERRILL, Justice.

This is an appeal from a decree of the Circuit Court of Mobile County, in Equity, overruling demurrers of the Alabama State Department of Revenue and the State of Alabama to the taxpayers' bill of complaint. The bill presented an appeal under the provisions of § 140, Title 51, Code of 1940, from a final assessment by the State Department of Revenue of franchise taxes for the year 1951. The franchise tax was assessed against the Aluminum Ore Company, which is a wholly owned subsidiary of the Aluminum Company of America. In 1952 Aluminum Ore Company was dissolved and all its assets were transferred to Aluminum Company of America and both corporations are parties to these proceedings.

The bill alleges that appellees are foreign corporations duly qualified to do business in Alabama; that Mobile County is the permanent residence of said Aluminum Ore Company; that the Alabama State Department of Revenue ascertained the amount of franchise tax due by appellees for the year 1951 to be $25,822.13; that appellees paid $17,196.64 but challenge and dispute the correctness of the balance of $8,625.19. The bill further alleges:

"4. That the said $8,625.19 in dispute represents a franchise tax of $2.00 per $1,000.00 on an inventory of bauxite ore valued at approximately $4,312,595.00, on which amount the Aluminum Ore Company refused to pay a franchise tax; that the said bauxite ore, on the value of which the Aluminum Ore Company refused to pay the $2.00 per thousand dollars of franchise tax, is bauxite ore which is stored in Mobile County, Alabama, some five or six miles from the plant of the Aluminum Ore Company; that this lot of bauxite ore was imported to the United States from Dutch Guiana, and no part of it has been used in the State of Alabama; that the bauxite ore which has heretofore been used and which is now being used at the plant of the Aluminum Ore Company located at the intersection of Mobile River and Three Mile Creek, in the City of Mobile, Alabama, is imported from Dutch Guiana and unloaded from ships at the wharf of the Alabama State Docks adjoining the property on which the plant of the Aluminum Ore Company has been constructed; that the lot of bauxite ore in question has been stored in Mobile County, Alabama, some distance from the plant of the said Aluminum Ore Company, and may never be used in Alabama; that the said bauxite ore may be shipped to one of the plants of the Aluminum Ore Company in other States such as the plants at East St. Louis, Illinois, or Bauxite, Arkansas, or may be otherwise disposed of without ever being employed in Alabama; that in time of emergency the Federal Government may require the Aluminum Ore Company to deliver all of the said bauxite ore to some other aluminum company; that although a portion of said bauxite ore so stored out in Mobile Coun-

ty, some distance from the plant of the Aluminum Ore Company has been stored in that location for some four or five years, and from time to time has been added to, yet, not one ounce of the said bauxite ore has ever been used in the plant of the Aluminum Ore Company located at Mobile, Alabama, and it is not planned to use any of such ore in the State of Alabama; and that the said Aluminum Ore Company refused to pay the franchise tax on the value of the bauxite ore so stored in Mobile County, some miles from the plant of the Aluminum Ore Company, because the said bauxite ore is not, and has not been, in any sense of the word 'capital employed in Alabama', within the meaning of the Alabama franchise tax law.

"5. Your Appellants respectfully show unto the Court that the mere investment by Appellants in property located in Alabama, or the mere ownership by Appellants of property located in Alabama, does not subject such property to a franchise tax, and the said franchise can only be collected on property which is employed in a corporate business done by Appellants in the State of Alabama."

The Alabama State Department of Revenue demurred to the complaint on the ground that the Department was neither a necessary nor a proper party. This demurrer was overruled. It should have been sustained. In Birmingham Vending Co. v. State, 251 Ala. 584, 38 So.2d 876, 879, we said:

"Section 140, Title 51, provides that from such final assessment 'either the state or the taxpayer may appeal'. 'In such appeals the party taking the appeal shall be styled the appellant and the party against whom the appeal is taken shall be styled the appellee.' The Department of Revenue administered by the commissioner is the State tribunal designated by law with judicial functions to pass upon questions of fact or law which may arise in making an assessment. [Citing cases.]

"The tribunal itself so acting is not a proper party to an appeal provided

by section 140, supra: neither is the commissioner. That statute shows clearly that the parties to it are the State and taxpayer. State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342(8).

"There was no error in sustaining the demurrer of the Revenue Department and Hamm, and dismissing them as parties."

■ The demurrer of the State of Alabama raises the question of the sufficiency of the allegations of the bill. On demurrer we take as true the allegations of the bill but construe them most strongly against the pleader. Paramount-Richards Theatres v. State, 252 Ala. 54, 39 So.2d 380.

The applicable provision of our constitution relating to the franchise tax on foreign corporations is § 232, a portion of which reads: "The legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by such corporation, but such franchise tax shall be based on the actual amount of capital employed in this state. Strictly benevolent, educational, or religious corporations shall not be required to pay such a tax."

Pursuant to this section the legislature provided in Title 51, § 348, Code of 1940, in part, as follows:

"Every corporation organized under the laws of any other state, nation or territory and doing business in this state, except strictly benevolent, educational or religious corporations, shall pay annually to the state an annual franchise tax of two dollars on each one thousand dollars of the actual amount of capital employed in this state. * * * Provided, that if a corporation has qualified to do business in this state it shall for the purpose of franchise tax prima facie be held to be doing business in the State of Alabama within the meaning of this title."

■ The major problem with which we are here confronted, is an application of the phrase "actual amount of capital employed in this state" to the allegations of the bill of complaint. These exact words are used in § 232 of our constitution and in Title 51, § 348, supra.

We gather from appellees' brief that they interpret the word "actual" as used in the above quoted phrase as having reference not only to the words "amount of capital" but also to the word "employed". Such is not the correct construction of the phrase. "Actual" as set out therein has reference to and qualifies the word "amount". We do not think this observation is dispositive of the issue but feel that it has significance.

■ There is no doubt that the property in question constitutes capital of the appellees. While they do not so state in express words, we believe that appellees concede that it is capital, but they contend that the storage of the bauxite ore is a mere investment in or ownership of property by them and that the property is not subject to the franchise tax because it is not actually employed in a corporate business done in this state. We agree with the contention that there must be employment of the property to subject it to the tax. We said in the case of State v. Travelers Ins. Co., 256 Ala. 61, 53 So.2d 745, 750,

"While admittedly these decisions have not set up a complete index to all items which are to be included as actual amount of capital employed in Alabama, the holdings do present a pattern which indicates that the governing principle of law is to the effect that all assets which have at least a legal situs in Alabama, which are used in Alabama by the foreign corporation in the exercise of its corporate functions, are to be considered as the determining factor. Certainly, to stay within the concepts of our decisions, the assets must be 'used' or 'employed' in the Alabama operations, and not merely 'affect' the Alabama operations."

■ Since it is obvious that the bauxite ore is an asset and its legal situs and actual situs is in Alabama, we should hold it sub-

ject to the franchise tax if we find that it is employed in Alabama. This court also said in the Travelers Ins. Co. case, supra:

"We have said the words 'actual amount of capital employed' are used in their natural and ordinary signification and in the generally accepted sense they have application to the properties and monies set apart from other uses and invested or employed in the operation of the business in the state with the view to income or profit therefrom. State v. Burchfield Bros., 211 Ala. 30, 99 So. 198."

While it is true that the plant of appellees may never use this ore in the sense that it may never be refined into finished aluminum products by the plant of appellees located in this state, we do not think the meaning of the word "employed" is to be so narrowly construed. On the contrary, where, as here, capital is in the form of raw material transported into and stored in this state, the employment consists in the continuous use thereof in maintaining a supply of raw material. It is in the sense of the pronouncement of this court in the case of State v. Travelers Ins. Co., supra: "Set apart from other uses and invested or employed in the operation of the business in the state with the view to income or profit therefrom." That this supply of bauxite ore may never find its way into the refining plant of appellees located in this state and that it may never be converted into an aluminum product by that plant, is not controlling. Capital in the form of raw materials regularly used by the appellees in their corporate functions in this state does not have to be in the process of refinement on the tax date in order to be subject to the franchise tax. We think a reasonable interpretation of the word "employed" would not so limit its meaning. In the case of Hollingsworth & Whitney Co. v. State, 241 Ala. 96, 1 So.2d 387, 388, where the question was whether a franchise tax could be collected on an uncompleted plant, the court said:

"It is contended that though it has the power to purchase the site and erect the plant, its capital is not 'employed' by so doing until it begins the conduct of some operating business in which such facilities will be used. * * *

"Here it is conceded that the taxpayer was doing business in Alabama so as to be subject to a franchise tax for the year 1939. The use of capital in the construction of a plant to make ready to carry on its main business is an employment of capital in Alabama. It is not intended as an investment as conceded. It is more than mere ownership. The use of capital in the construction of the plant and facilities is one continuous process, both before and after it is completed and put into operation. It is employed all the while.

"We agree with the trial court that the several items here in dispute do represent capital employed in this State during 1939, by this appellant, and were properly included in the tax base. * * *

"We come then to the second feature of the law. The tax base is capital of the corporation employed in Alabama. The Constitutional Convention did not seem to wish to limit the franchise tax to such capital only as was employed in doing business. There is no limitation in it as to the manner in which capital shall be employed to be within the tax base. * * *

"But when the foreign corporation is doing business in Alabama, then the franchise tax for the privilege of exercising any and all its powers and functions is based on the amount of its capital employed in any way in Alabama, whether in and as a part of its business or not. Employment, however, is not the same as investment, or ownership of property. Consolidated Coal Co. v. State [236 Ala. 489, 183 So. 650, 651], supra.

"The privilege is one thing, and the base for the tax upon the exercise of that privilege is another thing. Given an exercise of the privilege to do busi-

428

ness, the tax base includes capital in any sort of employment whether a feature of the business or not."

In State v. National Cash Credit Ass'n, 224 Ala. 629, 141 So. 541, 545, the court said on rehearing:

"The opinion does not mean, and, we think, is not fairly susceptible to a construction which would relieve a foreign corporation from a franchise tax because of a temporary shutdown of its plant; nor except from its capital employed in this state property owned but not immediately connected with present operations."

See also Alabama Textile Products Corp. v. State, post, p. 533, 83 So.2d 42.

Title 51, § 140, Code of 1940, under which this appeal was taken to the circuit court, provides in part:

■ "The assessment made by the department of revenue shall prima facie be correct, and where the appeal is taken by the taxpayer the burden shall be on the appellant to show that such assessment is incorrect." In view of the uncertain, indefinite and equivocal allegations concerning the employment of the bauxite ore, we are constrained to hold that they do not "meet and overcome the prima facie statutory presumption of the legality and correctness of the assessment" and, therefore, the circuit court erred in overruling the demurrer. Paramount-Richards Theatres v. State, 252 Ala. 54, 39 So.2d 380.

The decree of the circuit court, in equity, is reversed and one is here rendered sustaining the demurrer of each of the appellants and the cause is remanded. Appellees will be given 20 days in which to amend as they may be advised.

Reversed, rendered and remanded.

LIVINGSTON, C. J., and LAWSON, STAKELY, GOODWYN and MAYFIELD, JJ., concur.

SIMPSON, J., concurs in the result.