196 So.2d 408

**STATE of Alabama**

**v.**

**REYNOLDS METALS COMPANY.**

**3 Div. 218.**

Supreme Court of Alabama.

March 2, 1967.

Richmond M. Flowers, Atty. Gen., Willard W. Livingston and Herbert I. Burson, Counsel, and Maury D. Smith, Special Counsel for the State Dept. of Revenue, for appellant.

. Almon & McAlister, Sheffield, for appellee.

MERRILL, Justice.

The taxpayer, Reynolds Metals Company, a foreign corporation, disagreed with the franchise tax assessment fixed by the Alabama Department of Revenue for the tax year 1959, and appealed to the Circuit Court of Montgomery County under Tit. 51, § 140, Code 1940. The trial court reduced the amount of the franchise tax determined by the Revenue Department and the State appealed, contending that the trial court erred as to the items of accounts receivable and the value of its fixed assets—buildings, buildings under construction, lands, equipment, etc.

## Accounts receivable.

The first argued assignments of error deal with the following finding of the trial court:

"4. That the accounts receivable included by the State Department of Revenue (except those shown on appellant's franchise tax return for 1959 at a value of $562.70) in its determination of the actual amount of capital employed in Alabama by appellant were erroneously included therein; that such accounts receivable were neither employed nor used in Alabama; that they had no situs in Alabama; and that appellant's legal and commercial domiciles were outside the State of Alabama."

The evidence showed without dispute that appellee was a Delaware corporation, with its main office in Richmond, Virginia. Appellee had six regional sales offices and some branch sales offices which sold the aluminum products of plants in various states in the U. S. A. and several foreign countries. One branch sales office was in Birmingham, Alabama. When an order for a product was received by a branch sales office, it referred the order to the general or a regional sales office for acceptance and credit approval. After acceptance, the order was forwarded to one or more of appellee's plants for production and shipment and the order was accompanied by instructions as to price and shipping. When an order was received by an Alabama plant, the product was made or taken from stock and shipped to the customer. The shipping department of the Alabama plant prepared a bill of lading which was sent to the customer and prepared a tally sheet which set out information as to the shipment and this tally sheet was delivered to the billing department of the Alabama plant. The billing department then sent an invoice to the customer with a copy to appellee's general accounting office in Richmond, Virginia. The invoice set out the amount due for the product shipped and contained instructions as to where the bill should be paid. None of the bills was payable or paid in Alabama. All records of payments made and all books pertaining to the accounts receivable of appellee were kept and maintained in Richmond, Virginia, during all of 1958 and 1959. No stockholders or directors meetings of appellee were held in Alabama during 1958 or 1959. The Alabama operations of appellee were funded with cash or inventories. Cash in excess of $600,000.00 and inventories of over $17,000,000.00 were parts of the franchise tax base for the tax year in question and were two items of capital employed which were not in dispute. Accounts receivable played no part in appellee's Alabama activities. There was evidence that they were not used or employed in Alabama.

Thus, there was evidence to support the finding of the trial court that the accounts receivable, other than the small amount listed by the court, were not capital employed in Alabama.

Section 232 of our Constitution and Tit. 51, § 348, Code 1940, as amended, provide that the franchise tax on a foreign corporation shall be based on "the actual amount of capital employed in this state."

The State Department of Revenue contended that appellee's accounts receivable from sales of products manufactured by Alabama plants, irrespective of where they were shipped, should be included in the assessment as capital employed in Alabama. This contention is based on the following statements in State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 179 So. 541, 117 A.L.R. 498:

"All contracts are made in Chicago for taxpayer; whence bills are sent to purchasers of the product manufactured in Alabama, where also in Chicago are kept the record; and where payments are made, or in New York.

"But the tax we are dealing with is not a property tax but an excise for the privilege of exercising its corporate func-

tions in Alabama, and may be measured by the extent of its operations in Alabama, upon the basis of its employed capital, regardless of the nature of the business in which it is employed. Southern Natural Gas Corporation v. State of Alabama, 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970. To the extent that such capital is represented by bills receivable which arose from its Alabama operations, it is capital so employed in Alabama, regardless of the domicile or business situs of the corporate owner. State v. National Cash Credit Association, supra. (224 Ala. 629, 141 So. 541).

And on rehearing, the court said:

"Again the tax payer urges on its cross-assignment of errors that the State Tax Commission was in error when it computed the amount of accounts receivable on December 31st, as a part of the capital employed by the corporation. We dealt with the question urged on the submission that they are intangibles and have no situs in Alabama for taxation. * * *

* * * * * *

"It must be kept steadily in mind that this tax is not upon the several items which entered into the computation. It is upon the privilege of exercising its corporate functions in Alabama, measured by the amount of its capital employed in Alabama. It did a business in Alabama for that year of over $600,000.00, in the manufacture and sale of its products, at the selling price at the plant in Alabama.

"The tax payer has offered no evidence which reflects upon the finding of the commission fixing the amount of capital employed in Alabama to produce that business, except as to one item of the computation."

The court concluded that: "We see no reason to disturb our former opinion."

The distinguishing feature of the *Pullman-Standard* case from the instant case is that there, the taxpayer "offered no evidence" which reflected on the assessment based on the amount of capital employed in Alabama relating to accounts receivable, and the presumption of the correctness of the assessment made by the Department of Revenue prevailed; while here, the taxpayer's undisputed evidence showed that most of the accounts receivable were not employed in Alabama, and the trial court so found.

■ However, in affirming that finding of the trial court, we are not agreeing to that part of its finding "that they (the accounts receivable) had no situs in Alabama." That particular finding would seem to be contrary to the quoted excerpts from the *Pullman-Standard* case. This disagreement does not disturb the finding of the trial court as to accounts receivable because of the finding that the accounts receivable were not part of the capital employed in Alabama.

### Value of the fixed assets.

Our discussion of this matter is based upon Tit. 51, § 348, as amended in 1955, and does not include the amendments to the section made in 1961, 1963 and 1965, because this contested assessment was made in 1959.

The trial court found:

"3. That the actual amount of capital employed within the State of Alabama by appellant on January 1, 1959, upon which franchise tax for the year 1959 is payable is as follows:

| | |
|---|---|
| "Buildings and improvements; machinery and equipment; furniture and fixtures; autos, trucks and transportation equipment, surplus equipment; land; and construction in progress | $ 92,279,000.00 |
| "Inventory | 19,988,710.38 |
| Cash | 627,626.67 |
| Other assets | 1,500,000.00 |
| Accounts receivable | 562.70 |
| Total | $ 114,395,899.75" |

There is no dispute as to inventory, cash and other assets, and we have disposed of accounts receivable.

■ Appellant argues that the trial court followed the appraisal made for the taxpayer by Marshall & Stevens. An employee of that appraisal company, witness Vaughan, testified that no value had been given to buildings under construction or which had not been occupied. His testimony was that a facility in the process of construction has no value one minute prior to its completion and has full value one minute subsequent thereto.

That idea is contrary to our decisions. In Hollingsworth & Whitney Co. v. State, 241 Ala. 96, 1 So.2d 387, we said:

"* * * The use of capital in the construction of a plant to make ready to carry on its main business is an employment of capital in Alabama. It is not intended as an investment as conceded. It is more than mere ownership. The use of capital in the construction of the plant and facilities is one continuous process, both before and after it is completed and put into operation. It is employed all the while.

"We agree with the trial court that the several items here in dispute do represent capital employed in this State during 1939, by this appellant, and were properly included in the tax base."

We followed this statement in State v. Aluminum Ore Co., 263 Ala. 422, 82 So.2d 800, and Alabama Textile Products Corp. v. State, 263 Ala. 533, 83 So.2d 42.

■ But we have no way of knowing whether the trial court accepted and followed the Marshall & Stevens' appraisal or not. Their appraisal for fixed assets was $82,260,000.00 The appellant's three appraisers reached sums of $130,000,000, $126,000,000 and $122,000,000. The trial court found the amount to be $92,279,000.00,

and this specifically included "construction in progress." While we might have found a higher figure from the same evidence than did the trial court, still its finding shows that construction in progress was considered, thereby negating the argument that the Marshall & Stevens' appraisal was followed in this respect. And it is impossible to determine from the trial court's findings what particular amount was assessed to each of the items listed as making the total of $92,279,000.00.

Appellant concedes in brief that "The reasonable fair market value of the Reynolds Company fixed assets situated in Alabama is a question of fact to have been determined by the Court under the evidence presented in this case."

■ One of our most quoted rules is that when the evidence is heard orally by the trial court, the court's finding has the effect of a jury's verdict and will not be disturbed on appeal unless plainly erroneous or manifestly wrong. And this rule applies both in law and in equity. Rice v. Hill, 278 Ala. 342, 178 So.2d 168. We have applied this rule in the franchise tax case of State v. P. R. Mallory (Huntsville), Inc., 273 Ala. 326, 138 So.2d 693, where we said:

"We have often considered and applied the rule of presumption with its exceptions as argued by both parties, when the evidence is heard ore tenus before the trial court. This case, to our minds, is a typical example of where the rule should have governing application. So in conclusion, let it suffice to say that the evidence has been given a careful appraisal, with due regard to the nature of appellee's manufacturing operations, and we are not convinced that the ruling below was plainly and palpably wrong when it rendered its decree reducing the final assessment made by the Department of Revenue."

It follows that the decree of the trial court is affirmed with the exception of the reference in the court's findings that the

accounts receivable "had no situs in Alabama."

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.