The Honorable David H. Pingree Secretary Department of Health and Rehabilitative Services 1317 Winewood Boulevard Tallahassee, Florida 32301 Ms. Susan Lubitz Attorney Palm Beach County Health Department 901 Evernia Street West Palm Beach, Florida 33401
Dear Secretary Pingree and Ms. Lubitz:
This is in response to your request for an opinion on substantially the following question:
 DO THE EXEMPTIONS UNDER s. 402.302(4), F.S., AS AMENDED, AND s. 9, CH. 77-620, LAWS OF FLORIDA, APPLY TO PUBLIC AND NONPUBLIC SCHOOLS WHICH OFFER:
 A. PREKINDERGARTEN CLASSES DURING REGULAR SCHOOL HOURS IN THE SAME PHYSICAL PLANT OR IN AN ADJOINING STRUCTURE?
 B. INFANT CARE DURING REGULAR SCHOOL HOURS IN THE SAME PHYSICAL PLANT OR IN AN ADJOINING STRUCTURE?
 C. SCHOOL AGE CHILD CARE SERVICES BEFORE AND AFTER SCHOOL HOURS IN THE SAME PHYSICAL PLANT OR IN AN ADJOINING STRUCTURE?
The question is asked on behalf of the Palm Beach County Health Department, which is charged by s. 4 of Ch. 77-620, Laws of Florida, with the administrative responsibility for carrying out the duties of the Child Care Facilities Board of Palm Beach County. To the extent that the question necessarily involves the terms of s. 402.302(4), F.S., as amended by Chs. 84-551 and 85-54, Laws of Florida, as administered by the Department of Health and Rehabilitative Services, the department joins in the request for clarification of the exemptions provided under s. 9 of Ch. 77-620, supra, and the exception of certain facilities from the definition of "child care facility" in s. 402.302(4).
Chapter 77-620, Laws of Florida, amending Ch. 59-1698, Laws of Florida, designates the Board of County Commissioners of Palm Beach County as the Child Care Facilities Board and provides for the establishment of certain standards with respect to child care facilities in Palm Beach County. See, s. 6 of Ch. 77-620, supra, providing in subsection 1. thereof that county standards "shall meet or exceed state minimum standards . . . established by the Department of Health and Rehabilitative Services pursuant to chapter 402, Florida Statutes." The act further provides for certain definitions and exemptions from the application of the act. Specifically, s. 9 of Ch. 77-620, supra, states in pertinent part:
 The provisions of this Act shall not apply to any public or nonpublic school which is in compliance with the compulsory school attendance law, chapter 232, Florida Statutes, . . . or other similar institution otherwise regulated for health standards by a governmental agency. However, this section shall not be deemed to exempt institutions or facilities other wise [sic] regulated by the Department of Health and Rehabilitative Services pursuant to s. 402.301, et seq., Florida Statutes, as it may from time to time be amended or transferred.
Sections 402.301-402.319, F.S., as amended by Chs. 84-551 and 85-54, Laws of Florida, provide statutory authority for the licensing and regulation of certain child care facilities and child care personnel by the Department of Health and Rehabilitative Services and operate to authorize the department to designate and approve certain local licensing agencies to carry out the duties and responsibilities therein. See, ss. 402.306 and402.307, F.S., as amended. You have informed me that the Child Care Facilities Board created by Ch. 77-620, Laws of Florida, has been approved as the local licensing agency pursuant to s.402.307.
Section 402.302(4), F.S., as amended by Chs. 84-551 and 85-54, Laws of Florida, defines "child care facility" for purposes of ss.402.301-402.319, F.S., as amended, as:
 any child care center or child care arrangement which provides child care for more than five children unrelated to the operator and which receives a payment, fee, or grant for any of the children receiving care, wherever operated, and whether or not operated for profit. The following are not included: public schools and nonpublic schools and their integral programs;. . . . (e.s.)
See, s. 23, Ch. 85-54, supra, deleting the qualification that schools must be "in compliance with the Compulsory School Attendance Law, chapter 232" to be excluded from the definition of "child care facility" and substituting therefor the language emphasized above. Thus, public schools and nonpublic schools and their integral programs are not "child care facilit[ies]" for purposes of ss. 402.301-402.319, F.S., as amended. The term "integral programs" is not defined within ss. 402.301-402.319, F.S., as amended, or Ch. 85-54, Laws of Florida; however, the word "integral" has generally been defined as "[c]onstituting a completed whole; . . . lacking nothing of completeness." See, 46 C.J.S. Integral p. 1100; Ballentine's Law Dictionary 645 (3rd ed. 1969). And see, Random House Dictionary of the English Language Integral p. 738 (unabridged ed. 1967) (pertaining to or belonging as a part of the whole; constituent or component; necessary to the completeness of the whole); Webster's Third International Dictionary Integral p. 1173 (1966) (composed of constituent parts; making up a whole). Cf., Matezak v. Secretary of Health, Education and Welfare, 299 F. Supp. 409, 413 (D.C.N.Y. 1969) ("integral" means part of constituent component necessary or essential to complete the whole). Whether a particular child care center or arrangement constitutes an integral program for purposes of s. 402.302(4), F.S., as amended, would appear to present a factual question which can only be reached on a case-by-case basis. However, it would appear that a reading of s. 402.302(4), as amended, in pari materia with s. 402.302(8), F.S., as created by Ch. 84-551, supra, and amended by Ch. 85-54, supra, sheds additional light on the scope of regulation mandated by the Legislature. Although s.402.302(8) generally defines "child care personnel" to mean "all owners, operators, employees, and volunteers working in a child care facility" (e.s.), that section goes on to provide more specifically and particularly that
 For purposes of screening, the term shall also include persons who work in child care programs which provide care for *2527 children 15 hours or more each week in public or non-public schools . . . or those programs otherwise exempted under s. 402.316. The term does not include public or nonpublic school personnel who are providing care during regular school hours, or after hours for activities related to a school's program for grades kindergarten through 12 as required under chapter 232.
Cf., Adams v. Culver, 111 So.2d 665 (Fla. 1959); State ex rel. Loftin v. McMillan, 45 So. 882 (Fla. 1908) (specific and particular words in a statute prevail over more general words).
Legislative intent is the polestar by which a court must be guided in interpreting statutory provisions. Parker v. State,406 So.2d 1089 (Fla. 1981); Ervin v. Peninsular Telephone Co., 53 So.2d 647
(Fla. 1951). The intent of the Legislature as gleaned from the statute is the law. See, e.g., Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983). Moreover, to ascertain legislative intent, effect must be given to every part of the statute and to every part of the statute as a whole. See, State v. Rodriquez, 365 So.2d 157 (Fla. 1978); Wilensky v. Fields, 267 So.2d 1 (Fla. 1972) (statute must be construed so as to be meaningful in all its parts); Fleischman v. Department of Professional Regulation, 441 So.2d 1121 (3 D.C.A. Fla., 1983) (every statute must be read as a whole with meaning ascribed to every portion and due regard given to the semantic and contextual relationship between its parts). In addition, it must be assumed that a provision enacted by the Legislature is intended to have some useful purpose. Smith v. Piezo Technology and Professional Administrators, 427 So.2d 182 (Fla. 1983). See also, Pinellas County v. Woolley, 189 So.2d 217 (2 D.C.A. Fla., 1966); 82 C.J.S. Statutes s. 343 (words in statute should not be construed as surplusage).
I am therefore of the view that the exemption of public schools and nonpublic schools and their integral programs from the definition of "child care facility" at s. 402.302(4), F.S., as amended, extends and applies to child care programs which provide care for children 15 hours or more each week in public or nonpublic schools, since the specific and express inclusion by s.402.302(8), F.S., as amended, of persons who work in such programs within the definition of "child care personnel" for purposes of screening only would be rendered mere surplusage if such programs were already included within the definition of "child care facility" and its personnel subject to regulation. Additionally, an examination of the legislative history of Ch. 85-54, Laws of Florida, indicates that the Legislature intended to expand the definition of "child care personnel" to include for purposes of screening persons who work in child care programs which provide care for children 15 hours or more each week in public or nonpublic schools because such schools were not otherwise licensed as child care facilities. See, Staff Analysis of CS/SB 489, Senate Committee on Health and Rehabilitative Services, revised April 9, 1985, at p. 6. See also, s. 402.316(1), F.S., as amended, providing that ss. 402.301-402.319 do not apply to a child care facility which is an integral part of certain church and parochial schools "except for the requirements regarding screening of child care personnel." And see, s. 402.302(10), F.S., as created by s. 23, Ch. 85-54, Laws of Florida, defining screening; s.402.305(1)(a), F.S., as amended by s. 24, Ch. 85-54, establishing minimum standards for screening; and s. 402.3055(3), F.S., as amended, by s. 25 Ch. 85-54, providing for submission of fingerprints by child care personnel in a facility or "other child care programs."
However, since s. 402.302(8), F.S., as amended, provides that the term "child care personnel" "does not include public or nonpublic school personnel who are providing care during regular school hours, or after hours for activities related to a school's program for grades kindergarten through 12" (e.s.), I am further of the view that screening requirements are not applicable to public or nonpublic school personnel who work in child care programs in public or nonpublic schools which offer prekindergarten classes or infant care for children of prekindergarten age during regular school hours. It would appear that the placement of the single comma preceding the disjunctive "or" would preclude the qualifying phrase "for activities related to a school's program for grades kindergarten through 12" from modifying the clause which precedes the comma. See also, AGO 83-60; Mallard v. Tele-Trip Co.,398 So.2d 969 (1 D.C.A. Fla., 1981) (under doctrine of last antecedent, relative and qualifying words and phrases are to be applied to the word or phrase immediately preceding). Thus, the screening requirements do not apply to public and nonpublic school personnel providing child care during regular school hours without regard to the relationship between such child care and a school's program for grades kindergarten through twelve. With respect to child care outside of regular school hours, personnel in such programs are "child care personnel" for purposes of screening, unless such programs are "activities related to a school's program for grades kindergarten through 12." Accordingly, screening requirements are applicable to personnel providing school age child care services outside of regular school hours if such services are not related to the school's program for grades kindergarten through 12. Cf., s. 230.02, F.S., defining the scope of the district school system to include all public schools, classes, and courses of instruction and all services and activities directly related to education. . . ." (e.s.) However, the determination as to whether any particular child care program outside of regular school hours is an activity "related to a school's program for grades kindergarten through 12" presents a factual question which can only be resolved on a case-by-case basis.
As to the effect of Ch. 77-620, Laws of Florida, it would appear that the legislative intent at the time of enactment of the special act was to exempt public and nonpublic schools in Palm Beach County to the same extent as the existing general law. See, s. 402.302(4), F.S. 1977, excluding public and nonpublic schools "which are in compliance with the Compulsory School Attendance Law, chapter 232" from the definition of "child-care facility." Nevertheless, I find no indication in Ch. 85-54, Laws of Florida, of any legislative intent to repeal Ch. 77-620, supra, nor do I perceive that the special act conflicts in any way with Ch. 85-54, supra, so as to effect a repeal by implication of the special act. See, e.g., Town of Indian River Shores v. Richey, 348 So.2d 1
(Fla. 1977); Sweet v. Josephson, 173 So.2d 444 (Fla. 1965) (positive repugnancy must appear before court can declare that one statute impliedly repeals another). Rather, there is a general presumption that later statutes are passed with knowledge of prior existing laws, and a construction is favored which gives each one a field of operation, rather than have the former repealed by implication. Oldham v. Rooks, 361 So.2d 140 (Fla. 1978); State ex rel. Myers v. Cone, 190 So.2d 698 (Fla. 1939).
Accordingly, as to Palm Beach County, public and nonpublic schools "in compliance with the compulsory school attendance law, chapter 232, Florida Statutes," are exempt from the provisions of Ch. 77-620, Laws of Florida, unless such schools are "institutions or facilities other wise [sic] regulated by the Department of Health and Rehabilitative Services pursuant to s. 402.301, et seq., Florida Statutes," as amended. Chapter 232, F.S., requires "[e]ach parent of a child within the compulsory attendance age" to be responsible for such child's school attendance as required by law. Section 232.09, F.S. Section 232.16, F.S., further specifies that "[t]he superintendent shall be responsible for the enforcement of the provisions of this chapter." And see, s. 232.01(1)(a), F.S., as amended by s. 9 of Ch. 85-109, Laws of Florida, requiring regular school attendance of all children between the ages of 6 and 16 years. Although Ch. 232 does not require schools to comply with its provisions but rather imposes certain duties and responsibilities for compliance on the parents of children and the superintendent, I am of the view that the legislative intent embodied in s. 9 of Ch. 77-620, supra, is that schools which provide classes and instruction for those grades in which pupils between the ages of 6 and 16 years are enrolled are exempt from the provisions of Ch. 77-620, notwithstanding the fact that such schools may also offer prekindergarten classes, infant care, or school age child care service for children who are not within the ages for which Ch. 232 requires regular school attendance.
Finally, while the Department of Health and Rehabilitative Services has the authority and duty to regulate certain personnel who work in school age child care programs outside of regular school hours in public and nonpublic schools to the extent such personnel are subject to screening requirements pursuant to ss.402.305(1)(a) and 402.3055, F.S., as amended by Ch. 85-54, Laws of Florida, it does not appear that the department otherwise regulates "institutions or facilities" for purposes of the exception to the exemptions provided under s. 9 of Ch. 77-620, Laws of Florida. Accordingly, I am unable to conclude that such exception authorizes the Palm Beach County Child Care Facilities Board to regulate public or nonpublic schools otherwise exempted from the provisions of Ch. 77-620, supra. However, since state minimum standards for "child care personnel" as defined by s.402.302(8), F.S., as amended, must be met or exceeded by standards of the Palm Beach County Child Care Facilities Board pursuant to subsection 1. of s. 6 of Ch. 77-620, supra, and since such state minimum standards require screening of certain personnel who work in school age child care programs outside of regular school hours in public and nonpublic schools, I am of the view that the Palm Beach County Child Facilities Board is authorized to regulate such personnel for purposes of screening.
In sum, then, and unless and until legislatively or judicially determined otherwise, it is my opinion that the exemptions under s. 402.302(4), F.S., as amended by Chs. 84-551 and 85-54, Laws of Florida, and s. 9, Ch. 77-620, Laws of Florida, apply to public and nonpublic schools which offer prekindergarten classes or infant care during regular school hours or school age child care services before and after school hours, but personnel who work in child care programs which provide care for children for 15 hours or more each week in public or nonpublic schools outside of regular school hours and which are not related to a school's program for grades kindergarten through twelve are subject to screening requirements pursuant to ss. 402.305(1)(a) and 402.3055, F.S., as amended, and that the Palm Beach County Child Care Facilities Board is authorized to regulate such personnel for purposes of screening in order to meet or exceed state minimum standards for child care personnel.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General